**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| GRANT A. GOMEZ, on behalf of himself and all others similarly situated; LANIE L. GOMEZ, on behalf of herself and all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>WELLS FARGO BANK, NA; VALUATION INFORMATION TECHNOLOGY LLC, d/b/a Rels Valuation,<br><br>    Defendants. | No. CV-09-00181-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendants' Joint Motion to Change Venue/Transfer Case. (Dkt. # 33.) For the following reasons, the Court grants the motion.[1]

**BACKGROUND**

In this case, Plaintiffs advance a putative class-action against Defendants Wells Fargo Bank, NA ("Wells Fargo") and Valuation Information Technology LLC, d/b/a Rels

---

[1] Defendants have requested oral argument on this motion. That request is denied because the parties have thoroughly discussed the law and the evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

Valuation ("Rels"). In short, Plaintiffs assert that Wells Fargo used Rels to secure low-rate appraisals in connection with home loans, while at the same time charging borrowers an appraisal fee in excess of the actual cost of appraisal. Plaintiffs make six claims in their Second Amended Complaint. Count one alleges that both Defendants violated 18 U.S.C. § 1962(c) and (d), part of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (Dkt. # 27 at 23-30.) Count two alleges that Defendant Rels violated 12 U.S.C. § 2607(b), part of the Real Estate Settlement Procedures Act ("RESPA"). (Dkt. # 27 at 30-31.) Count three alleges that both Defendants violated 12 U.S.C. § 2607(a) and (c), other provisions of RESPA. (Dkt. # 27 at 31-32.) Count four asserts unjust enrichment against Defendant Rels. (Dkt. # 27 at 32-33.) Count five alleges that Defendant Wells Fargo violated California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. (Dkt. # 27 at 33-36.) Count six alleges that both Defendants violated Arizona Revised Statutes section 13-2314.04, Arizona's RICO law. (Dkt. # 27 at 36-39.)

Defendants now advance a Joint Motion to Change Venue/Transfer Case (Dkt. # 33), arguing that this case should be pursued in the District of Minnesota.

**DISCUSSION**

**I.   Legal Standard**

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "[S]ection 1404(a) requires two findings – that the district court is one where the action might have been brought and that the convenience of parties and witnesses in the interest of justice favor transfer." *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). "Under § 1404(a), the district court has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (internal quotations omitted). The party making the transfer motion has the burden of showing that transfer is proper. *See id.* at 499 (holding that district court "did not abuse its

discretion in denying the motion to transfer" because the defendant had "failed to meet its burden of showing that Pennsylvania was the more appropriate forum for the action").

In making this determination, the district court may consider a variety of factors, including: the convenience of the parties, the relative financial burdens, the convenience of witnesses, the availability of compulsory process to compel unwilling witness attendance, the availability of witnesses and their live testimony at trial, the ease of access to sources of proof, the differences in the costs of litigation in the two forums, contacts with the chosen forum, jurisdiction over the parties, the state most familiar with the governing law, the relevant public policy of the forum state, the existence of any forum selection clause, and the relative docket congestion of the courts. *See* 28 U.S.C. § 1404(a); *Jones*, 211 F.3d at 498-99; *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 639 (9th Cir. 1988); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1196 (S.D. Cal. 2007).

**II.    Analysis**

Defendants argue that this case should be transferred to the District of Minnesota because the action could have been brought in that district and because the balance of factors counsels that it would be more convenient and fair to litigate this matter there. (Dkt. # 33.) Plaintiffs do not dispute that this action could have been brought in the District of Minnesota, but rather dispute only that the balance of factors suggests that it is more convenient and fair to litigate this case in the District of Arizona. (Dkt. # 38.) Upon consideration of the relevant factors, the Court agrees with Defendants and concludes that transfer is appropriate.

**A.    The Convenience of the Parties**

This factor is not dispositive. Both Plaintiffs and Defendants would be inconvenienced by the other's preferred forum, although the inconvenience to Defendants appears to be somewhat greater than the inconvenience to Plaintiffs. Rels is headquartered and has its principal place of business in Minnesota. (Dkt. # 33 Ex. 1 at 1.) Rels' executive management and administrative employees, who are likely to be extensively engaged in this litigation and outnumber the Arizona Plaintiffs at this time, are also located in Minnesota.

(*Id.*) Thus, litigation of this case in Arizona will prove significantly inconvenient for Rels and its employees, whose testimony will be essential to this case. Likewise, Wells Fargo's Service Provider Management Group ("SPMG"), which is the Wells Fargo division primarily responsible for matters relating to appraisals and property valuation at the loan origination stage, conducts the majority of its business operations out of Minnesota. (Dkt. # 33 Ex. 2 at 1.) Litigating this case in Arizona will therefore be inconvenient for Wells Fargo as well. Plaintiffs are Arizona residents, and although they will similarly be inconvenienced if this case proceeds in Minnesota, they are the only two Arizona residents currently in the litigation. Plaintiffs are entitled to some deference to their choice of forum, but that deference is relatively minimal in class action suits. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("Although great weight is generally accorded [the] plaintiff's choice of forum, when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight.") (internal citation omitted); *see also Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) ("[W]here there are hundreds of potential plaintiffs . . . the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened."). Thus, the somewhat greater inconvenience to Defendants and the slight deference due Plaintiffs for selecting this forum essentially balance out.

**B.     The Convenience and Availability of Witnesses**

These factors strongly favor transfer. "The convenience of witnesses is said to be the most important factor in passing on a transfer motion." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 497, 501 (C.D. Cal. 1981) (citing *Saminsky v. Occidental Petroleum Corp.*, 373 F. Supp. 257, 259 (S.D.N.Y. 1974)).

In this case, most if not all of the witnesses from Rels, and many of the witnesses relevant to Rels' communications and agreements with Wells Fargo, are located in Minnesota. As noted, Rels' executive management and administrative employees are located in Minnesota, which serves as Rels' corporate headquarters. (Dkt. # 33 Ex. 1 at 1.) The Vice President of Wells Fargo's SPMG attests that the "potential witnesses concerning the

allegations in this lawsuit, Wells Fargo's appraisal practices, the Agreement [between Rels and Wells Fargo], and the interactions between Wells Fargo and Rels, including employees with the most knowledge of SPMG and its interactions with Rels, are *all* located in Minnesota." (Dkt. # 33 Ex. 2 at 1 (emphasis added).) Defendants identify many of these individuals by name. (Dkt. # 41 Ex. A, B.) By contrast, Plaintiffs appear to be the only Arizona witnesses, with the possible exception of the (as yet unidentified) appraiser for their house, and Defendants have stipulated to taking Plaintiffs' depositions in Arizona. (Dkt. # 41 at 8.) Moreover, Rels has no corporate offices in Arizona, and Wells Fargo maintains no SPMG personnel in Arizona. (Dkt. # 31 Ex. 1; Dkt. # 41 Ex. B at 1.)

Courts have found that similar circumstances weigh in favor of transfer. *See, e.g.*, *Foster v. Nationwide Mut. Ins. Co.*, No. C 07-04928 SI, 2007 WL 4410408, at *3-4 (N.D. Cal. Dec. 14, 2007) (finding, in a class action case, that the convenience of witnesses weighed in favor of transfer to a venue where the defendant's corporate headquarters was located and where many of the management-level witnesses the defendant would be likely to call at trial were located, even though the defendant was a national company with offices throughout the country). In these circumstances, Plaintiffs would no doubt be inconvenienced in appearing at trial in Minnesota. However, most or all of the Rels witnesses, and many of the Wells Fargo witnesses, would similarly be inconvenienced by having to appear at trial in Arizona. Given the number of these employees, the likelihood that many of these witnesses would be called for deposition and trial, the essentiality of these witnesses, and the fact that Defendants have agreed to conduct Plaintiffs' depositions in Arizona, this factor weighs in favor of transferring this case to Minnesota.[2]

---

[2]Plaintiffs assert their claims on behalf of a nationwide class, and thus future Arizona plaintiffs may be located and added to the lawsuit. However, being a nationwide class, there could just as easily be future Minnesota plaintiffs, and Plaintiffs have offered nothing to suggest that there are likely more putative class members in Arizona than in other states. Thus, the potential for future Arizona plaintiffs does not weigh against transfer. Even if Plaintiffs did identify such other class members, the named composition of an ostensibly nationwide plaintiff class at this point in the litigation is of only marginal importance in

**C. The Ease of Access to Sources of Proof, the Relative Financial Burdens, and the Differences in the Costs of Litigation**

These factors favor transfer. "Generally, litigation costs are reduced when venue is located near most of the witnesses expected to testify or give depositions." *Italian Colors Restaurant v. Am. Express Co.*, No. C 03-3719 SI, 2003 WL 22682482, at *5 (N.D. Cal. Nov. 10, 2003). Also, litigation costs are reduced when the action is pursued near the location of documents likely to be at issue in the case. *See id.* (finding that the presence of documentary evidence in another forum weighed in favor of transfer because "[d]ocuments pertaining to defendants' business practices are most likely to be found at their principal place of business" and that "[a]lthough developments in electronic conveyance have reduced the cost of document transfer somewhat, the cost of litigation will be substantially lessened if the action is venued in the same district where most of the documentary evidence is found"); *see also Foster*, 2007 WL 4410408, at *6 (transferring venue based in part on the same principle).

Here, most if not all of Rels' witnesses and documentary evidence is located in Minnesota, as is some of the evidence and witnesses of Wells Fargo. Specifically, Rels' computer systems are located in Minnesota, and its electronic files are maintained on systems in Minnesota. (Dkt. # 33 Ex. 1 at 1.) The system for transmitting orders for appraisal services between Wells Fargo and Rels is located in Minnesota. (*Id.* at 2.) During the appraisal process, the appraiser selected by Rels is either a Rels employee or an outside appraiser, and all communication between Rels and the appraisers is conducted through an office in Bloomington, Minnesota. (*Id.*) Quality control checks are likewise performed in that office. (*Id.*) All data and images relevant to the appraisal process and the appraisals themselves are maintained on systems in Minnesota. (*Id.*) Also, Wells Fargo's SPMG

---

determining which venue is most convenient for the plaintiff class as a whole. *See Foster*, 2007 WL 4410408, at *5 (rejecting the notion that the composition of the plaintiff class at such an early point in litigation informed the venue analysis because "[w]ere it otherwise, a party could engineer a favorable geographic distribution of opt-in plaintiffs for purposes of a transfer motion by selectively notifying potential class members in certain states").

conducts the majority of its business operations out of Minnesota. (Dkt. # 33 Ex. 2 at 1.) The majority of its employees are located in Minnesota. (*Id.*) Other Wells Fargo divisions that work on appraisal issues at the loan origination stage, including the Credit Policy and Collateral Policy groups for Wells Fargo Home Mortgage and Wells Fargo's Online Property Underwriting System, are located in Minnesota. (*Id.* at 1-2.) The majority of communications between SPMG and Rels occurs in Minnesota. (*Id.* at 2.) The electronic system for transmitting appraisal orders from Wells Fargo to Rels via a third-party vendor is located in Minnesota, and the records relating thereto are located in Minnesota. (*Id.*) Plaintiffs, on the other hand, are the only Arizona connection to this putative nationwide class action. It is Minnesota that appears to be the center of discovery in this case, and thus pursuing this action in Minnesota will ease access to sources of proof, lessen the relative financial burdens of litigation, and reduce the overall cost of litigation. *See Bratton v. Schering-Plough Corp.*, No. CV 07-0653, 2007 WL 2023482, at *5 (D. Ariz. July 12, 2007) (finding it appropriate to transfer venue to the "center of discovery" in a nationwide class action). This factor therefore supports transfer.

**D.    The Remaining Factors**

The remaining factors are either inapplicable or neutral.

**1.    The Availability of Compulsory Process**

This factor is neutral. A witness is generally beyond the subpoena power of a court if he is located outside of the issuing court's district and beyond one hundred miles of the place specified for deposition, hearing, trial, production, or inspection. *See* Fed. R. Civ. P. 45(b)(2). Thus, any of the witnesses in Minnesota would be beyond the subpoena power of this Court. However, because most if not all of the Minnesota witnesses are employees of Wells Fargo or Rels, it may be assumed that they will cooperate with their respective employer's trial efforts. *FUL Inc. v. Unified Sch. Dist. No. 204*, 839 F. Supp. 1307, 1311 (N.D. Ill. 1993) ("[I]t is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily."). While it is true that third-party witnesses (such as employees of the third-party router used by Defendants in Minnesota or

1 Plaintiff's Arizona appraiser) would be beyond the subpoena power of courts in the other
2 forum, none of those witnesses have been identified with sufficient particularity to merit
3 consideration here. Therefore, this factor carries no weight.

### 2. The Parties' Contacts with their Chosen Forum

This factor does not significantly influence the analysis in class action cases. *See Italian Colors*, 2003 WL 22682482, at *5 ("Plaintiffs' contacts with the forum . . . are of minimal value in a class action . . . ."). Each party naturally has extensive contacts with their preferred forum, as Plaintiffs live in Arizona and Rels is headquartered in Minnesota (as is Wells Fargo's SPMG). However, neither party raises any specific contacts with their preferred forum that would influence the analysis.

### 3. The State Most Familiar with the Governing Law

This factor carries little weight. As Defendants point out, the agreement between Wells Fargo and Rels is governed by Minnesota law. (Dkt. # 33 at 8-9.) To the extent that the alleged scheme between Wells Fargo and Rels is conditioned on that agreement, how Minnesota law interprets that agreement may prove relevant to resolution of this case. Thus, the Minnesota District Court would be better equipped to resolve any such issues. On the other hand, Plaintiffs advance claims under federal statutes, Arizona law, and California law. While both district courts in Arizona and Minnesota are equally well-equipped to decide any federal law issues that arise, the Arizona District Court is more familiar with Arizona law (and to a lesser extent California law), and therefore the Arizona District Court would be more familiar with part of the applicable law. Thus, each court would have some advantage the other lacks in evaluating certain aspects of the case. However, none of the claims or issues in this case portend to implicate any aspects of either state's law so as to require any particular familiarity. Rather, both courts would be able to adequately evaluate the case and apply the relevant law. Thus, this factor does not suggest either forum is more appropriate. *See Foster*, 2007 WL 4410408, at *6 (reasoning that transferring a case from California to Ohio was justified, even though ancillary claims involved California law, because "other federal courts are fully capable of applying California law").

### 4. The Relevant Public Policy of the Forum State

This factor does not carry significant weight. While Plaintiffs correctly point out that Arizona has a strong public policy favoring compensation of its residents, there is no indication that the Minnesota District Court would be unwilling or unable to provide such compensation if it is ultimately determined to be warranted. Moreover, while Arizona does have an interest in this case because Plaintiffs are Arizona residents, Minnesota likewise has an interest in the litigation because Rels is headquartered there. The parties articulate no public policy differences that would affect resolution of this litigation, and thus this factor does not inform the Court's analysis. *See Foster*, 2007 WL 4410408, at *7 (reasoning that both proposed forums had an interest in the litigation because the plaintiffs were residents of one and the defendant had its corporate headquarters in the other, and thereupon concluding that this factor was neutral).

### 5. The Existence of a Forum Selection Clause

This factor is irrelevant, as there is no forum selection clause at issue in this case.

### 6. The Docket Congestion of the Courts

This factor does not carry significant weight. Defendants assert that Arizona has the more congested docket because the time from filing to disposition is longer (Dkt. # 33 at 12), while Plaintiffs assert that Minnesota has the more congested docket because it has more cases pending per judge (Dkt. # 38 at 10-11). The Court has reviewed the statistical data to which the parties refer,[3] and neither party's argument is entirely convincing. While the Minnesota District Court did have a shorter median time from filing to disposition than the Arizona District Court in 2008, the opposite was true in 2007 and 2006. According to the data, the Arizona District Court has had a relatively stable and predictable time-to-disposition rate, while Minnesota's has varied more significantly. Thus, the predictive power of these statistics is limited in determining the current docket congestion in the Minnesota District

---

[3]The Federal Court Management Statistics on which the parties rely are available at http://www.uscourts.gov/cgi-bin/cmsd2008.pl (last visited June 23, 2009).

Court. Regardless, other courts have declined to assign significant weight to this factor in similar circumstances. *See, e.g.*, *Foster*, 2007 WL 4410408, at *7 (finding this factor neutral where one court had more cases pending per judge and the other court had a longer median time from filing to disposition); *Bratton*, 2007 WL 2023482, at *7 (finding that a few months difference in median time from filing to disposition was not sufficient to inform the transfer analysis and rendered this factor neutral). To the extent that this factor might carry weight, the faster disposition time that has more recently been characteristic of Minnesota would weigh in favor of transfer, but the Court is convinced that this case will be ruled on in a timely fashion in either Court. Thus, this factor plays little role in the analysis.

### E. Summary

On balance, the factors weigh in favor of transfer. Many of the factors carry little or no weight, either because they do not apply to the circumstances of this case or because the inconvenience to each party is relatively equivalent. However, the critical factors involving the convenience of witnesses and the availability of the evidence weigh heavily in favor of transferring this case to the District of Minnesota, and there are no factors that weigh against transfer. In these circumstances, transfer is appropriate. *See Italian Colors*, 2003 WL 22682482, at *7 (granting a motion to transfer where "all factors not neutral in disposition weigh in favor of venue transfer").[4]

### CONCLUSION

The balance of factors weighs in favor of a venue transfer to the District of Minnesota.

**IT IS THEREFORE ORDERED** that Defendants' Joint Motion to Change Venue/Transfer Case (Dkt. # 33) is **GRANTED**.

---

[4] There are currently two motions to dismiss pending in this action. (Dkt. ## 31, 32.) Because the Court has determined that transfer to a different venue is proper, the Court will not rule on the pending motions. *See Emjayco* ex rel. *Bart L. Troy v. Morgan Stanley & Co.*, 901 F. Supp. 1397, 1403 (C.D. Ill. 1995) (declining to rule on pending motions to dismiss after concluding that venue transfer was appropriate).

**IT IS FURTHER ORDERED** that the Clerk of the Court shall **TRANSFER** this case to the District of Minnesota.

DATED this 1st day of July, 2009.

*[Signature]*
G. Murray Snow
United States District Judge